Office of the Attorney General - State of Texas



October 13, 1999

The Honorable Jeff Wentworth
Chair, Nominations Committee
Texas State Senate
P.O. Box 12068
Austin, Texas 78711-2068

Opinion No. JC-0126

Re: Whether a state license held by a corporation is automatically continued when the corporation converts to another type of business entity under article 5.17 of the Texas Business Corporation Act (RQ-0074-JC)

Dear Senator Wentworth:

The Texas Business Corporation Act allows a corporation to change its organizational form and convert to another type of business entity. You ask whether a state license held by a corporation continues automatically with the new entity when the corporation converts to a new entity. You are concerned that different state agencies take different positions on whether a license automatically continues, and you tell us that "a uniform interpretation of the effect of a conversion from one business entity to another on a license held by the converting entity would be helpful to many license holders." Letter from Honorable Jeff Wentworth, Texas State Senate, to Honorable John Cornyn, Texas Attorney General (June 10, 1999) (on file with Opinion Committee).

The Business Corporation Act allows a domestic corporation to "adopt a plan of conversion and convert to a foreign corporation or any other entity," provided certain conditions are met. TEX. BUS. CORP. ACT ANN. art. 5.17 (Vernon Supp. 1999). The conversion provision was enacted by the Legislature in 1997 as part of a larger bill revising business organization laws. Supporters of the provision argued that it would create a more favorable business climate in the state by allowing corporations to convert easily from one type of organizational structure to another:

> Texas law recognizes at least seven different forms of business organizations, in both domestic and foreign forms, each of which carries different benefits and drawbacks. However, once a business is organized in one form, it cannot change to another business form without dissolving in its current form and reforming in a new one. In a healthy economy, businesses are dynamic, not static, and there should be flexibility to assume new forms. However, the expenses required to dissolve a business in one form and start up in another now limit such conversions.

To solve this problem, HB 1104 would allow a process of conversion and conversion merger.

HOUSE RESEARCH ORG., BILL ANALYSIS, Tex. H.B. 1104, 75th Leg., R.S. 5 (May 5, 1997); *see also* Tex. Att'y Gen. Op. No. JC-0015 (1999) at 4-6 (discussing legislative history of conversion provision).

In order for a corporation to convert to a new business form, it must comply with the requirements of the conversion statute. Among other things, the corporation must adopt a plan of conversion approved by its shareholders, draft articles of conversion, and deliver the articles of conversion to the Secretary of State. TEX. BUS. CORP. ACT ANN. arts. 5.17, 5.18 (Vernon Supp. 1999). If the Secretary of State finds that the articles of conversion conform to law and that the corporation has complied with applicable conversion requirements, the Secretary of State issues a certificate of conversion and the conversion becomes effective. *Id.* arts. 5.18(C), 5.19.

The Act sets out the effects of a conversion. Generally speaking, upon conversion, the converting entity continues to exist and all of the assets and liabilities of the converting entity that exist at the time of conversion continue with the entity in its new form:

A. When a conversion of a converting entity takes effect:

(1) the converting entity shall continue to exist, without interruption, but in the organizational form of the converted entity rather than in its prior organizational form;

(2) all rights, title, and interests to all real estate and other property owned by the converting entity shall continue to be owned by the converted entity in its new organizational form without reversion or impairment, without further act or deed, and without any transfer or assignment having occurred, but subject to any existing liens or other encumbrances thereon;

(3) all liabilities and obligations of the converting entity shall continue to be liabilities and obligations of the converted entity in its new organizational form without impairment or diminution by reason of the conversion;

(4) all rights of creditors or other parties with respect to or against the prior interest holders or other owners of the converting entity in their capacities as such in existence as of the effective time of the conversion will continue in existence as to those liabilities and obligations and may be pursued by such creditors and obligees as if the conversion had not occurred;

(5) a proceeding pending by or against the converting entity or by or against any of the converting entity's interest holders or owners in their capacities as such may be continued by or against the converted entity in its new organizational form and by or against the prior interest holders or owners, as the case may be, without any need for substitution of parties;

(6) the shares and other evidences of ownership in the converting entity that are to be converted into shares, evidences of ownership, or other securities in the converted entity as provided in the plan of conversion shall be so converted, and if the converting entity is a domestic corporation, the former holders of shares in the domestic corporation shall be entitled only to the rights provided in the plan of conversion or to their rights under Article 5.11 of this Act;

(7) if, after the effectiveness of the conversion, a shareholder, partner, member, or other owner of the converted entity would be liable under applicable law, in such capacity, for the debts or obligations of the converted entity, such shareholder, partner, member, or other owner of the converted entity shall be liable for the debts and obligations of the converting entity that existed before the conversion takes effect only to the extent that such shareholder, partner, member, or other owner: (a) agreed in writing to be liable for such debts or obligations, (b) was liable under applicable law, prior to the effectiveness of the conversion, for such debts or obligations, or (c) by becoming a shareholder, partner, member, or other owner of the converted entity, becomes liable under applicable law for existing debts and obligations of the converted entity;

(8) if the converted entity is a foreign corporation or other entity, such converted entity shall be deemed to: (a) appoint the Secretary of State in this state as its agent for service of process in a proceeding to enforce any obligation or the rights of dissenting shareholders of the converting domestic corporation, and (b) agree that it will promptly pay the dissenting shareholders of the converting domestic corporation the amount, if any, to which they are entitled under Article 5.11 of this Act; and

(9) if the converting corporation is a domestic corporation, the provisions of Articles 5.11, 5.12, and 5.13 of this Act shall apply as if the converted entity were the survivor of a merger with the converting entity.

TEX. BUS. CORP. ACT ANN. art. 5.20 (Vernon Supp. 1999). While the Act generally speaks of the continuation of the converting entity and its continued ownership of all "rights, title, and interests to all real estate and other property," no specific mention is made of the continuation of state licenses held by the converting entity.

As a general rule, the authority granted in an official license cannot be transferred or assigned without the consent of the licensing authority, unless a pertinent statute provides otherwise. *John B. Barbour Trucking Co. v. State*, 758 S.W.2d 684, 691 (Tex. App.–Austin 1988, writ denied). Some licensing statutes and regulations specifically allow transfer, and others forbid it. For example, a pawnshop license may be transferred or assigned with the approval of the Consumer Credit Commissioner, TEX. FIN. CODE ANN. § 371.070 (Vernon 1998), but a pharmacy license issued by the State Board of Pharmacy "is not transferable or assignable," TEX. REV. CIV. STAT. ANN. art. 4542a-1 § 30(d) (Vernon Supp. 1999).

However, in the case of a conversion of a business entity under the Business Corporation Act, no transfers take place. Instead, the converted entity "continue[s] to exist, without interruption," TEX. BUS. CORP. ACT ANN. art. 5.20(A)(1) (Vernon Supp. 1999), and "all rights, title, and interests to all real estate and other property owned by the converting entity" continue to be owned by the converted entity in its new organizational form "without further act or deed, and without any transfer or assignment having occurred," *id.* art. 5.20(A)(2). All assets and liabilities, all rights of creditors, all pending causes of action, and all shares and evidences of ownership, all stay with the converted entity in its new form. *Id.* art. 5.20(A)(1)-(9). These automatic continuations are consistent with the purpose of the conversion provision: to facilitate the transition from one type of business form to another.

In our view, the continuation of the converting entity encompasses the continuation of state licences held by it. The essential feature of the conversion statute is that the converting corporation continues to exist, uninterrupted, as it assumes its new business form. As we have said, no transfers take place when there is a conversion. Instead, everything that the corporation has simply stays with it. Although state licenses are not specifically mentioned among the those things that automatically make the transition, we think that the statute as a whole, viewed in light of its purpose, contemplates that a state license does not die upon a corporation's conversion, but continues with it. Accordingly, we conclude that, as a general rule, when a corporation converts to another type of business entity pursuant to article 5.17 of the Business Corporation Act, a license held by the converting corporation continues to be held by the converted entity in its new form.

However, as your question implies, a specific licensing statute or regulation might conflict with this general rule by prohibiting the continuation of a license, by imposing conditions or requirements on its continuation, or by restricting the issuance of a license to certain types of business entities. For example, the Alcoholic Beverage Code allows conversion of a business holding a permit or license only if the ownership of the newly created business entity is identical to the ownership of the former business entity. *See* TEX. ALCO. BEV. CODE ANN. §§ 11.12, 61.14 (Vernon Supp. 1999). It also requires a converting license holder to file a notice of the conversion

and pay a $100 fee for each licensed premises affected by the conversion. *Id.* And the Consumer Credit Commissioner requires a pawnshop licensee to file an application to alter its organizational form of business. *See* 7 TEX. ADMIN. CODE § 85.2 (1999). Similarly, the Railroad Commission requires a licensed gas dealer to apply for a license when converting to a new business form. *See* 16 TEX. ADMIN. CODE §§ 9.16, 13.67 (1999).

Such conditions and restrictions are normally part of a licensing entity's authority, and the conversion statute does not take away that authority. A license is generally a privilege, and once a license or permit has been granted, "the holder may be subject to certain requirements in order to keep it." *Ex parte Mata*, 925 S.W.2d 292, 292 (Tex. App.–Corpus Christi 1996, no pet.). The requirements "vary with the nature of the activity and the goals of the regulating government." *Id.* at 294. Texas has a diverse array of licensing entities, and each might have particular reasons for imposing conditions or requirements on a converting license holder. As we have said, the particular requirements of a licensing statute or regulation might conflict with the general provisions in the Business Corporation Act that the converting entity continues to exist in its new form with all that it had in its previous form.

Normally, when a general statute conflicts with a more specific statute, the statutes should be construed to give effect to both, if possible. TEX. GOV'T CODE ANN. § 311.026(a) (Vernon 1998). However, if the conflict between the general provision and the specific provision is irreconcilable, the specific provision prevails as an exception to the general provision, unless the general provision is the later enactment and the manifest intent is that the general provision prevail. *Id.* § 311.026(b).

We find nothing in the conversion provision or its legislative history that manifests an intent that it prevail over more specific, previously enacted licensing provisions. In fact, the statute may be read to express an intent to yield to laws with which it is inconsistent:

> A domestic corporation may adopt a plan of conversion and convert to a foreign corporation or any other entity if . . . the conversion (a) is permitted by, or not inconsistent with, the laws of the state or country in which the converted entity is to be incorporated, formed, or organized, and (b) the incorporation, formation, or organization of the converted entity is effected in compliance with such laws . . . .

TEX. BUS. CORP. ACT ANN. art. 5.17(A) (Vernon Supp. 1999). Since the legislature requires a conversion to be consistent with and in compliance with other laws, we doubt that the legislature intended it to prevail over more specific laws. Thus, if a state licensing law or regulation imposes additional requirements or restrictions on a converting entity, the entity must comply with those requirements or restrictions.

Whether a specific licensing statute or regulation conflicts with the general conversion provisions of the Business Corporation Act, and whether the Act or a conflicting statute or rule controls in such event, depends upon the particular statute or regulation at issue. Consequently, we

are unable to say that all state agencies must treat all state licenses the same when a conversion takes place. It is within the discretion of the legislature to implement a uniform treatment of licenses by all state agencies upon the conversion of a corporation holding a license. In the absence of such a law, we conclude that while the general rule is that licenses convert automatically, this rule may be subject to the specific statutory requirements or regulations of particular licensing entities.

## S U M M A R Y

When a corporation converts to another type of business entity in accordance with the Texas Business Corporation Act, as a general rule a state license held by the converting corporation continues to be held by the new business entity. This rule may be subject to the particular statutory requirements or regulations of the specific state entity that issued the license.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Barbara Griffin
Assistant Attorney General - Opinion Committee